UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
ROCK ISLAND DIVISION

| | |
|---|---|
| ALEXANDER GONZALEZ,   )  | |
|       Plaintiff,    )  | |
|             )  | |
|    v.       )  | Case No. 4:25-cv-4023-SEM-DJQ |
|             )  | |
| KURT OSMUNDSON, et al., )  | |
|       Defendants.   )  | |

**MERIT REVIEW ORDER**

**SUE E. MYERSCOUGH, United States District Judge:**

Plaintiff *pro se* Alexander Gonzalez has filed a Complaint (Doc. 1) under 42 U.S.C. § 1983, which is now before the Court for screening.  Also pending before the Court is a Motion to Request Counsel (Doc. 5).  The Court holds that Plaintiff may proceed on a deliberate indifference claim against Defendants and grants Plaintiff's Motion to Request Counsel.

### I. COMPLAINT

**A. Screening Standard**

The Court must "screen" Plaintiff's Complaint and dismiss any legally insufficient claim or the entire action if warranted. 28 U.S.C. § 1915A.  A claim is legally insufficient if it "(1) is frivolous, malicious, or fails to state a claim upon which relief may be

granted; or (2) seeks monetary relief from a defendant who is immune from such relief." *Id.* In reviewing the complaint, the Court accepts the factual allegations as accurate, liberally construing them in the plaintiff's favor. *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013). However, conclusory statements and labels are insufficient. Enough facts must be provided to "state a claim for relief that is plausible on its face." *Alexander v. United States*, 721 F.3d 418, 422 (7th Cir. 2013) (citation omitted).

### B. Facts Alleged

At all times relevant to his Complaint, Plaintiff was an inmate within the Illinois Department of Corrections ("IDOC") at Hill Correctional Center ("Hill"). Plaintiff's Complaint names the following Defendants at Hill: Dr. Kurt Osmundson and Nurse Practitioners ("NPs") M. Newman, Kasey, and Kramer.

Plaintiff alleges that he injured his left wrist and forearm. On December 9, 2023, Plaintiff saw a non-party nurse practitioner who noted swelling to his wrist and thumb and inability to perform wrist flexion or extension.

Plaintiff saw Defendant Newman on December 11, 2023. Newman noted that Plaintiff's wrist had bruising and deformity.

Plaintiff notified Newman that he had not received an x-ray. Newman prescribed Plaintiff an ace bandage wrap, 800mg of ibuprofen, and a cold pack for 24 hours.

Plaintiff saw Defendant Osmundson on December 12, 2023, but Plaintiff alleges that Osmundson "refused to provide any professional judgment regarding Plaintiff's injury until an x-ray was completed."

Plaintiff alleges that the x-ray was canceled several times. Nurse practitioner Newman noted that Plaintiff's x-ray was rescheduled from December 12 to December 22, 2023, after which it was moved to January 8 and then to January 15, 2024. Therefore, Plaintiff alleges, because the x-ray had not yet been completed, Defendant Osmundson refused to see Plaintiff during a January 9, 2024, appointment.

Plaintiff received the x-ray on January 15, 2024. The x-ray allegedly showed that Plaintiff had suffered a "fracture involving the distal radius with mild displacement associated with soft tissue swelling."

Plaintiff was sent on medical furlough to an outside hospital, where he was seen by non-party Dr. Wilson, an orthopedic

consultant. Plaintiff alleges that Dr. Wilson described Plaintiff's injury as follows: "callus formation seen on the fracture site, the fracture has significant healing, and open reduction." In sum, Plaintiff alleges that his wrist had already begun to heal incorrectly by the time he saw Dr. Wilson. For that reason, Dr. Wilson allegedly indicated that internal fixation would be difficult.

Plaintiff alleges that Dr. Wilson prescribed him numerous medications, including 600mg of gabapentin (also known as Neurontin). On January 23, 2024, Defendant NP Kasey allegedly determined that Dr. Wilson's recommended dosage was too high and that Plaintiff should start with a low dose of 100-300mg gabapentin. Plaintiff inquired about the prescribed medication on January 31 and February 24, 2024, indicating that the gabapentin was not helping with his pain. Defendant NP Kramer allegedly refused to discuss Plaintiff's complaints of uncontrolled pain with him in February 2024 because Kramer indicated that Plaintiff would be returning to see Dr. Wilson soon.

### C. Analysis

In order to state an Eighth Amendment claim of deliberate indifference to a serious medical need, a complaint must adequately

allege that (1) the plaintiff had an objectively serious medical need, and (2) the defendant was deliberately indifferent to that need. *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976).

"[A] prisoner's medical need is 'serious' where 'the failure to treat a prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain.'" *Hayes v. Snyder*, 546 F.3d 516, 522 (7th Cir. 2008), *quoting Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997).  Plaintiff has adequately alleged that he suffered from an objectively serious medical need in the form of a fractured wrist that was not healing properly and was causing ongoing pain.

Plaintiff has also adequately alleged that Defendants were deliberately indifferent to his medical needs.  Plaintiff alleges that Defendants Osmundson and Newman were aware that he was subjected to a delay of over one month in receiving an x-ray of his wrist.  *See, e.g., Conley v. Birch*, 796 F.3d 742, 749 (7th Cir. 2015) (eight-day delay in taking x-ray during "crucial healing period" following injury may constitute sufficient evidence of deliberate indifference where record shows that "following a fracture, callus formation begins to take place very quickly," and "if bones fuse

together improperly, permanent injury may result" (internal quotations omitted)).

Plaintiff has also adequately alleged that Defendants Kasey and Kramer were deliberately indifferent to Plaintiff's need for effective pain medication that was ordered by the orthopedic specialist Dr. Wilson. *See Petties v. Carter*, 836 F.3d 722, 729 (7th Cir. 2016) (A defendant medical provider's "refus[al] to take instructions from a specialist" may constitute evidence that the defendant knew their treatment decisions created a serious risk to an inmate's health.); *see also Mitchell v. Kallas*, 895 F.3d 492, 498 (7th Cir. 2018).

## II. REQUEST FOR COUNSEL

When confronted with a request for *pro bono* counsel under 28 U.S.C. §1915(e)(1), the district court is to make the following inquiries: (1) whether the indigent plaintiff made a reasonable attempt to obtain counsel or has been effectively precluded from doing so; and if so, (2) given the difficulty of the case, whether the plaintiff appears to be competent to litigate it himself. *Pruitt v. Mote*, 503 F.3d 647, 654-55 (7th Cir. 2007).

The first inquiry is a mandatory threshold determination and requires the plaintiff attempt to obtain a lawyer independently. *Eagan v. Dempsey*, 987 F.3d 667, 682 (7th Cir. 2021). Plaintiff has done so, having attached to his Motion a list of three law firms from whom he has requested representation, as well as the one response he received declining to represent him.

Turning to the second element of the inquiry, the district court must undertake "the individualized analysis that *Pruitt* requires[.]" *Navejar v. Iyiola*, 718 F.3d 692, 697 (7th Cir. 2013). Specifically, the court must consider "whether the difficulty of the case—factually and legally—exceeds the particular plaintiff's capacity as a layperson to coherently present it to the judge or jury himself." *Pruitt*, 503 F.3d at 655. This inquiry must be a "practical one, made in light of whatever relevant evidence is available on the question." *Id*. The court should take account of all evidence in the record relevant to the plaintiff's ability to litigate. *Navejar*, 728 F.3d at 696. Such evidence may include any physical, intellectual, or psychological limitations the plaintiff may have and the practical problems the plaintiff may encounter in gathering evidence from

individuals employed by an institution where he is no longer housed. *Navejar*, 718 F.3d at 698.

Here, Plaintiff attests that his highest level of education was eighth grade, that he has limited ability to speak, write, and/or read English, and that he takes psychiatric medication. While the Court notes that Plaintiff's Complaint was clear and concise, Plaintiff indicates that the Complaint was actually prepared by a fellow inmate on his behalf.

Plaintiff must understand that he is not entitled to the appointment of counsel in a civil case such as this, nor does the Court have the authority to require an attorney to accept *pro bono* appointments in such cases. *Pruitt*, 503 F.3d at 653. The most that the Court may do is to ask for volunteer counsel. *Jackson v. County of McLean*, 953 F.2d 1070, 1071 (7th Cir. 1992).

Nevertheless, the Court finds that Plaintiff appears to have satisfied the considerations under *Pruitt*, 503 F.3d at 654-55. Plaintiff's Motion (Doc. 5) is GRANTED, and the Court will therefore assist Plaintiff by attempting to recruit an attorney on his behalf. The Court will inform the parties as soon as possible after the Court

either finds an attorney to represent Plaintiff or after it becomes clear to the Court that no attorney will volunteer to do so.

**IT IS THEREFORE ORDERED:**

1) **According to the Court's Merit Review of Plaintiff's Complaint under 28 U.S.C. § 1915A, Plaintiff has alleged enough facts to proceed with an Eighth Amendment claim for deliberate indifference to as serious medical need against Defendants Osmundson, Newman, Kasey, and Kramer. Additional claims shall not be included in the case, except at the Court's discretion on motion by a party for good cause shown or under Federal Rule of Civil Procedure 15.**

2) **Plaintiff's Motion to Request Counsel [5] is GRANTED.**

3) **This case is now in the process of service. The Court advises Plaintiff to wait until counsel has appeared for Defendants before filing any motions, to give Defendants notice and an opportunity to respond to those motions. Motions filed before Defendants' counsel has filed an appearance will generally be denied as premature. Plaintiff need not submit evidence to the Court unless otherwise directed by the Court.**

4) **The Court will attempt service on Defendants by mailing waivers of service. Defendants have sixty days from service to file an Answer. If a Defendant has not filed an Answer or appeared through counsel within ninety days of the entry of this Order, Plaintiff may file a motion requesting the status of service. After Defendants have been served, the Court will enter an order setting discovery and dispositive motion deadlines.**

5) **Concerning a Defendant who no longer works at the address provided by Plaintiff, the entity for whom that Defendant worked while at that address shall submit to the Clerk said Defendant's current work address or, if not known, said Defendant's forwarding address. This**

information shall be used only for effectuating service. Documentation of forwarding addresses shall be retained only by the Clerk and shall not be maintained in the public docket nor disclosed by the Clerk.

6) Defendants shall file an Answer within sixty days of the date the Clerk sends the waiver. A motion to dismiss is not an answer. The Answer should include all defenses appropriate under the Federal Rules. The Answer and subsequent pleadings shall be to the issues and claims stated in this Order. In general, an answer sets forth a Defendant's positions. The Court does not rule on the merits of those positions unless and until a Defendant files a motion. Therefore, no response to an Answer is necessary or will be considered.

7) This District uses electronic filing, which means that, after Defendants' counsel has filed an appearance, counsel will automatically receive electronic notice of any motion or other paper filed by Plaintiff with the Clerk. Therefore, Plaintiff does not need to mail copies of motions and other documents that Plaintiff has filed with the Clerk to Defendants' counsel. However, this does not apply to discovery requests and responses. Discovery requests and responses are not filed with the Clerk. Instead, Plaintiff must mail his discovery requests and responses directly to Defendants' counsel. Discovery requests or responses sent to the Clerk will be returned unfiled unless they are attached to and the subject of a motion to compel. Discovery does not begin until Defendants' counsel has filed an appearance, and the Court has entered a scheduling order, which will explain the discovery process in more detail.

8) Defendants' counsel is granted leave to depose Plaintiff. Defendants' counsel shall arrange the time for the deposition.

9) Plaintiff shall immediately notify the Court, in writing, of any change in his mailing address and telephone number. Plaintiff's failure to inform the Court of a change in

mailing address or phone number will result in the dismissal of this lawsuit with prejudice.

10) If a Defendant fails to sign and return a waiver of service to the Clerk within thirty days after the waiver is sent, the Court will take appropriate steps to effect formal service through the U.S. Marshals service on that Defendant and will require the Defendant to pay the total costs of formal service under Federal Rule of Civil Procedure 4(d)(2).

11) The Court directs the Clerk to enter the standard qualified protective order under the Health Insurance Portability and Accountability Act.

12) The Court directs the Clerk to attempt service on Defendants under the standard procedures.

ENTERED May 22, 2025.

s/ *Sue E. Myerscough*
_____
SUE E. MYERSCOUGH
UNITED STATES DISTRICT JUDGE